IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID R. GRAY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 12 C 6281 |
| | ) |
| PHOENIX BOND & INDEMNITY CO. and | ) |
| BCS SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

     David R. Gray, Jr., the trustee of the Mid West Real Estate Investment Company Employees' Profit Sharing Plan & Trust (the Plan), brought this action in August 2012. In his complaint, he requests a declaratory judgment and an injunction against Phoenix Bond & Indemnity Co. and BCS Services, Inc. Phoenix Bond and BCS previously obtained a monetary judgment against the Plan, and Gray sought to prevent them from executing their judgment against the assets of the Plan. Shortly after Gray filed the lawsuit, the parties reached an agreement, memorialized in an agreed order entered by the Court, by which the Plan could continue to operate but would notify Phoenix Bond and BCS of any proposed payments to Plan participants greater than $50,000. The Plan has now proposed two such payments. Phoenix Bond and BCS object, as permitted by the agreed order, asking the Court to disallow the payments and permit them to enforce their judgments against the Plan. For the following reasons, the Court overrules Gray's arguments against the objection and directs the parties to submit a

proposal for the Plan to satisfy the judgment.

**Background**

In a 2011 jury verdict in Case Nos. 05 C 4095 and 07 C 1367, the Plan was found liable to Phoenix Bond and BCS for violating the Racketeer Influenced and Corrupt Organizations Act and interfering with prospective business advantage. The jury awarded compensatory and punitive damages. The Court then entered judgment against the plan (along with other defendants, jointly and severally) for $2,002,875 in compensatory damages and $125,500 in punitive damages against the Plan alone. The Court later made an award of attorney's fees, finding the Plan jointly liable with all of the other defendants in the case for $8,158,262.97 and jointly liable with a smaller group of defendants for $2,440,346.64. A supplemental fee petition, for fees connected with post-judgment matters and appeal, remains pending before the Court.

Phoenix Bond and BCS served a citation to discover assets on the Plan in March 2012. By operation of law, this prohibited the Plan from making any transfer of "any property not exempt from execution or garnishment belonging to the judgment debtor." March 13, 2012 Citation to Discover Assets at 2, No. 05 C 4095 [docket no. 990-6].

After service of the citation, Gray (the Plan's trustee) filed the present action against Phoenix Bond and BCS for injunctive relief under the Employee Retirement Income Security Act (ERISA) and a declaratory judgment. In his complaint, Gray said that the citation froze the Plan's assets, leaving it unable to make payments to Plan beneficiaries. He argued that this violated ERISA and the Plan terms. Gray, Phoenix Bond, and BCS then reached an agreement, which the Court approved. Gray agreed that the Plan would give Phoenix Bond and BCS quarterly documentation of its assets

and liabilities, as well as notification if the Plan wished to make a payment over $50,000 to a Plan participant. The agreement permitted Phoenix Bond and BCS to object to such a payment.

In late March, Phoenix Bond and BCS made an objection as permitted under the Agreement, because the Plan proposed payments of $463,988.54 and $80,078.53 to two Plan participants. The objection made two requests of the Court: that it "enter an order (a) disallowing those two payments, and (b) permitting the Defendants to enforce their judgments against the Plan." Defs.' Obj. at 3. Gray responded with substantive arguments, and Phoenix Bond and BCS have now replied in turn.

## Discussion

Gray makes several arguments about why ERISA prohibits Phoenix Bond and BCS from enforcing their judgment against the Plan.[1] First, Gray contends that permitting recovery against the Plan would violate the "exclusive-benefit rule" of ERISA, which says a plan's assets must be held exclusively for providing benefits to participants and for defraying reasonable expenses of administering the plan. Pl.'s Mem. at 5 (citing 29 U.S.C. § 1103(c)(1). Second, Gray argues that if the Plan complies with the payment demands of Phoenix Bond and BCS, it will violate its fiduciary duty to Plan participants. Finally, Gray argues that compliance with defendants' payment demands would constitute a "prohibited transaction" under ERISA, because satisfying the judgment with Plan assets is "for the benefit" of the Plan, which ERISA forbids.

**A.    Exclusive benefit rule**

---

[1] Gray also argues that the objection was facially deficient because it contained no argument or authority and must be rejected as a result. The Court disagrees. The prior proceedings in the case and the underlying judgment made the basis for the objection readily apparent.

3

Gray first points to a section of ERISA requiring plan assets to "be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). ERISA, however, "clearly contemplates the enforcement of money judgments against benefit plans." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 832 (1988).[2] The civil enforcement statute of ERISA contains a provision that makes this plain: "Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2). This "unqualified" statutory language "appears to make clear" that an ERISA plan can be sued and that a prevailing party can "seek enforcement of the resulting award against plan assets." *Milgram*, 666 F.3d at 72. Other cases have noted that the "exclusive benefit" provision does not turn every ERISA plan "into a lockbox." *U.S. Foodservice, Inc. v. Truck Drivers & Helpers Local Union No. 355 Health & Welfare Fund*, 700 F.3d 743, 747 (4th Cir. 2012) (discussing paying mistaken contributions out of plan).

Gray offers no authority stating that an ERISA plan cannot pay a judgment because of the statute's "exclusive benefit" provision. Gray cites a Supreme Court case

---

[2] This statement in *Mackey* was about welfare benefit plans under ERISA, not defined contribution plans—but it applies to both under the plain language of 29 U.S.C. § 1132(d). *See Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 72 (2d Cir. 2011) ("Although *Mackey* concerned a welfare benefit plan rather than a defined contribution pension plan like the one at issue in this case, the plain language of Section 502 does not distinguish between types of ERISA-governed plans.").

4

that says this provision "demands only that plan assets be held for supplying benefits to plan participants." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004). Yet this same case refers to this provision not as the "exclusive benefit rule," but as the "anti-inurement provision," because the preceding clause of § 1103(c)(1) states that "the assets of a plan shall never inure to the benefit of any employer." *Raymond B. Yates*, 541 U.S. at 22. The Supreme Court often refers to the provision in this way. *See, e.g.*, *Beck v. Pace Int'l Union*, 551 U.S. 96, 107 (2007) (reason for provision is to "prohibit[ ] employers from misappropriating plan assets for their own benefit"); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 437 (1999). The purpose of the provision "is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Raymond B. Yates*, 541 U.S. at 23. Further, *Raymond B. Yates* concerned "working owner participation in ERISA plans," not payment of a money judgment by an employee benefit plan, *id.*, and thus it is ultimately unhelpful to Gray.[3]

Gray only briefly addresses the second part of section 1103(c)(1)—that a plan's assets can also be used to "defray[ ] reasonable expenses of administering the plan." Gray does not explain why paying a judgment would not fit into this category. He simply says it does not and then cites a case for the principle of *inclusio unius est exclusio alterius* to argue that whatever is not in the statute is excluded from its reach. Phoenix Bond and BCS seize upon this omission, arguing that payment of a judgment "defrays a reasonable expense of administering the Plan, which is expressly permitted by ERISA."

---

[3] Gray cites a district court case from Wisconsin with similar exclusivity language, but that case likewise does not concern an attempt to enforce a money judgment against a plan. *See Sullivan v. Cuna Mut. Ins. Soc'y*, 683 F. Supp. 2d 918, 931 (W.D. Wis. 2010).

Defs.' Repl. at 6. They cite a recent Second Circuit case where the court addressed arguments similar to those Gray makes here. *See Milgram*, 666 F.3d at 76–78. There, the court said that ERISA's anti-alienation provision "does not protect participants against poor investment decisions by the plan administrator" and "does not protect them against the risk that poor management decisions will expose the plan's assets to liability." *Id.* at 76. This generally supports Phoenix Bond and BCS's argument.

There is otherwise little authority on what it means to "defray[ ] reasonable expenses of administering the plan." (A look to ERISA's legislative history similarly provides few answers.) In one district court case, the court declared that "defraying reasonable expenses" does not include "allow[ing] a fiduciary to set its own administrative fee and directly collect those fees from plan assets." *Chao v. Crouse*, 346 F. Supp. 2d 975, 988 (S.D. Ind. 2004) (noting that doing so violated fiduciary's duty to plan participants). A 1997 Department of Labor advisory opinion stated that "reasonable expenses of administering a plan include direct expenses properly and actually incurred in the performance of a fiduciary's duties to the plan." Op. 97-03A, 1997 WL 28100, at *3 (U.S. Dep't of Labor Jan. 23, 1997). The same opinion stated that certain discretionary activities having to do with the formation rather than the management of a plan are not reasonable plan expenses. *Id.*[4] Another opinion states that the "exclusive benefit" provision "appl[ies] to the selection and monitoring of plan investments, including plan investments made pursuant to a particular investment strategy." Op. 06-08A, 2006 WL 2990326, at *2 (U.S. Dep't of Labor Oct. 3, 2006).

---

[4] Confusingly, a later advisory opinion by the same agency states that "[t]he Department ordinarily will not issue advisory opinions regarding sections 403(c)(1) [29 U.S.C. § 1103(c)(1)] . . . of ERISA." Op. 08-06A, 2008 WL 4559901, at *3 (U.S. Dep't of Labor July 10, 2008).

These statements tend to confirm that ERISA's anti-inurement or exclusive benefit provision is meant to preclude self-dealing among plan fiduciaries and that it does not necessarily encompass a situation where a litigant is attempting to satisfy a judgment against a plan.

With that in mind, the contention of Phoenix Bond and BCS makes more sense. As noted above, money judgments are generally permissible against employee benefit plans. What law that exists indicates that ERISA's exclusive benefit provision was intended to prevent plan fiduciaries from engaging in self-dealing, not to shield benefit plans from money judgments. And that aside, the Plan's payment of a money judgment could very well be classified as an administration cost permitted by section 1103(c)(1).

Taken to a logical endpoint, Gray appears to be saying that an ERISA benefit plan can never pay a judgment from its assets, because ERISA itself prohibits it. That does not appear to be the law. The Court concludes that Gray's argument that the "exclusive benefit" rule precludes money judgments against the Plan is without merit.

**B.     Fiduciary duty**

Gray's second argument is an echo of his first—that paying the judgment with Plan assets would breach his fiduciary duties, because ERISA requires him to act solely in the interest of plan participants and beneficiaries. Gray says paying a judgment "would neither provide benefits to the Plan Participants or the Plan Beneficiaries nor defray any reasonable expenses of administering the Plan." Pl.'s Resp. at 7 (citing 29 U.S.C. § 1104(a)(1)).

Like the "exclusive benefit" provision discussed above, section 1104(a)(1), which Gray cites here, requires an ERISA plan fiduciary to "discharge his duties with respect

7

to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." As with his first argument, Gray does not cite any authority directly stating that this section of ERISA prohibits a plan from satisfying a money judgment with its assets after a jury verdict against it. Instead, Gray cites cases for the general notion that ERISA plan fiduciaries must "act with complete and undivided loyalty to the beneficiaries." Pl.'s Resp. at 7 (quoting *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984)).

*Milgram*, the Second Circuit case discussed above, addresses Gray's argument on this topic. The court there held that a plan's payment of a judgment is "a ministerial function, not a discretionary one to which fiduciary liability might attach," because the plan was "under a legal duty to reimburse" the prevailing plaintiff. *Milgram*, 666 F.3d at 77. *Milgram* was on a slightly different footing from this case, because it dealt with a suit by a beneficiary against his own plan. But the case also noted that the language of 29 U.S.C. § 1132(d) is "plain" and "unqualified" in stating that a money judgment against an employee benefit plan is enforceable against the plan. *Milgram*, 666 F.3d at 72.

In short, Gray's second argument can be dealt with in the same manner as his "exclusive benefit" argument: the fiduciary duty provision of ERISA that Gray cites does not appear to prohibit payment of a money judgment against a plan, and other language in ERISA specifically allows such judgments, fiduciary duty or no. The Court therefore determines that Gray's argument on this question is without merit.

**C.    Prohibited transaction**

Finally, Gray contends that paying the judgment from Plan assets is prohibited

because doing so provides a benefit to the Plan itself. A provision of ERISA entitled "Prohibited Transactions" states that plan fiduciaries cannot "cause the plan to engage in a transaction" that is "a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). Because ERISA defines "party in interest" as "administrator" and "plan sponsor," Gray says he cannot use plan funds to satisfy the judgment because it would be to the benefit of the Plan's sponsor to reduce the Plan's "joint liability to Defendants." Pl.'s Resp. at 8 (citing 29 U.S.C. § 1002(14)(A) & (C)). Further, Gray points to a list of exemptions to this rule in ERISA, and notes that paying a judgment is not among them. *See* 29 U.S.C. § 1108.

This argument is unpersuasive for the same reasons discussed above: the language of ERISA itself contemplates money judgments against plans, and the provision Gray cites here says nothing specific to the contrary. Furthermore, the logic of Gray's argument on this provision is questionable. Although it may be to the Plan's benefit to reduce its joint liability, that liability was already established by the judgment in the underlying case. Paying a money judgment would cover the amount owed, perhaps. But paying the money judgment now would decrease the amount of funds that the Plan has available for other purposes, which is arguably to its detriment, not its benefit. Gray is therefore incorrect that the Plan's satisfaction of a judgment from its assets must be a "prohibited transaction" under ERISA, because such a payment is not necessarily "for the benefit of a party in interest"—namely, the Plan itself and its trustee. 29 U.S.C. § 1106(a)(1)(D).

As Phoenix Bond and BCS point out, the *Milgram* case also addressed this argument. It held that a money judgment against the ERISA plan in that case was a

legal duty and thus that paying the judgment had little to do with serving its own interest. *Milgram*, 666 F.3d at 77. This is also indisputably the case here. The Court therefore disagrees with Gray on this argument as well.

**Conclusion**

For the reasons stated above, the Court overrules Gray's arguments in response to defendants' objection to payments from the Plan. The status and ruling date of April 28, 2014 is vacated. The parties are directed to confer regarding satisfaction of the judgment. They are to submit a joint status report containing a proposal (or separate proposals) by no later than May 9, 2014. The case is set for a further status hearing on May 15, 2014 at 9:30 a.m.

                                                   MATTHEW F. KENNELLY
                                                   United States District Judge

Date: April 28, 2014